UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO SCARBOROUGH,

    Plaintiff,

v.                                          Case No. 8:15-cv-1262-T-33EAJ

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

## **ORDER**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

### I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Supplemental Security Income ("SSI") on April 7, 2011, alleging disability beginning March 1, 2007. (Tr. 180-86). The Commissioner denied Plaintiff's claims initially and on reconsideration. (Tr. 68-89, 92-102). Plaintiff then requested and appeared at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 34-60, 103). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits. (Tr. 20-29). Subsequently, Plaintiff requested review from the Appeals Council, which was denied. (Tr. 1-7). Plaintiff timely filed a complaint with this Court. (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

## II. NATURE OF DISABILITY CLAIM

### A. Statement of the Case

Plaintiff was 28 years old at the time the ALJ issued his decision. (Tr. 28, 39). Plaintiff has a special program high school diploma and previously worked as a dishwasher and laborer. (Tr. 39, 204, 402). Plaintiff alleges inability to work as of March 1, 2007 due to intellectual limitations, schizoaffective disorder, bipolar disorder, depression, and obesity.[1] (Tr. 203).

### B. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he

---

[1] Although Plaintiff alleges a disability onset date of March 1, 2007 (Tr. 199), he becomes eligible for SSI in the first month where he is both disabled and has an SSI application on file. *See* 20 C.F.R. §§ 416.202(g), 416.203(a), 416.501. Plaintiff filed his application for SSI on April 7, 2011 (Tr. 180-86). Therefore, Plaintiff is eligible for benefits beginning April 1, 2011.

is disabled. 20 C.F.R. § 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert,* 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At step two, the ALJ found Plaintiff suffers from the following severe impairments: borderline intellectual functioning, schizoaffective disorder, personality disorder, mood disorder, and polysubstance abuse. (Tr. 22). The ALJ considered listed impairments 12.03, 12.04, 12.05, 12.06, 12.08, and 12.09 from 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926), and found Plaintiff did not have an impairment, or combination of impairments, that meets the severity listed.[2] (Tr. 22-25). The ALJ further determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform a full range of work at all exertional levels, but is limited to unskilled work with a specific vocational preparation of 1 or 2 simple, repetitive, and routine tasks with occasional interaction with supervisors, coworkers and the general public. (Tr. 25-28).

Plaintiff has no past relevant work. (Tr. 28). Therefore, the ALJ proceeded to step five where he sought the advice of a vocational expert ("VE") to determine whether Plaintiff's age, education, work experience, and RFC allowed her to perform other work that existed in the national economy. The ALJ, with the assistance of the VE's testimony, determined that

---

[2] Specifically, the ALJ found that the "paragraph C" criteria of listing 12.05 were not met because Plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70 and because plaintiff "has not demonstrated deficits in adaptive reasoning." (Tr. 25).

[3] The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. § 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. *Id.*

Plaintiff was able to perform other work. (Tr. 28). Thus, the ALJ concluded Plaintiff was not under a disability as defined by the Social Security Act. (Tr. 29).

## III.    ANALYSIS

### A.    The Standard of Review

Review of the Commissioner's final decision is limited to determining whether the decision that a claimant is not disabled is supported by substantial evidence and that the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *Carnes v. Sullivan,* 936 F.2d 1215, 1218 (11th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted). Under the substantial evidence test, findings of fact made by administrative agencies may be reversed only when the record compels a reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.*

Furthermore, it is the Commissioner's duty, and not the Court's, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971). The Commissioner is also responsible for drawing inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court is not to reweigh the evidence. *Parker v. Bowen,* 793 F.2d 1177, 1178 (11th Cir. 1986). Rather, the Court must scrutinize the entire record to determine the reasonableness of the ALJ's findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The Court's review is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled, taking into account evidence favorable and unfavorable to the decision. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result or if the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n. 3 (11th Cir. 1991); *Barnes v. Sullivan,* 932 F.2d 1356, 1358 (11th Cir. 1991).

The Court may remand the decision of the Commissioner under sentence four of 42 U.S.C. §405(g) if the Commissioner's decision: 1) applies the incorrect law, 2) fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or 3) is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). With respect to the ALJ's findings of fact, judicial review is limited to determining whether the record, as a whole, contains substantial evidence to support the ALJ's factual findings and whether the decision comports with correct legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the reviewing court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Goodley v. Harris*, 608 F.2d 234, 236 (5th Cir. 1979). The reviewing court must affirm if the ALJ's decision is supported by substantial evidence. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

However, the Court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). No presumption of validity attaches to the Commissioner's conclusions of law, which are

reviewed *de novo*. The Commissioner is required to apply the correct law and provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991*); see Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).

### B.     Issues on Appeal

Plaintiff argues that the ALJ erred by failing to develop a full and fair medical record. Specifically, Plaintiff contends the ALJ was required to send him for a consultative psychological examination in order to obtain current IQ scores. (Doc. 20, pp. 5-12). Plaintiff asserts his current IQ scores were necessary for the ALJ to determine whether those scores would warrant application of section 12.05C of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.  (*Id.,* pp. 6, 9-10).

A claimant bears the burden of proving his impairments met or equaled a listed impairment. *See* 20 C.F.R. § 416.920(a)(4)(iii); *Doughty,* 245 F.3d at 1278; *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991).

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

*Wilson,* 284 F.3d at 1224 (citations omitted); *see* 20 C.F.R. §§ 416.925, 416.926. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). "For a claimant to qualify for

6

benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment." *Id.* at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

> Listing 12.05 states, in relevant part:
>
> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

Here, Plaintiff claims the ALJ improperly failed to credit testing performed when he was five years old, which revealed a performance IQ score of 95, a verbal IQ score of 60, and a full scale IQ score of 75 (Tr. 25, 415). (Doc. 20, pp. 8-9). With respect to childhood IQ testing, the Regulations state, in pertinent part:

> Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. … IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and for 1 years if at 40 or above.

20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00D (10). Plaintiff was twenty-eight years old at the time of the ALJ's decision (Tr. 23, 255); thus, IQ test results from when he was five years old, more than 20 years earlier, were no longer valid. *See id.; see also, e.g., Robinson v. Astrue*, No. 8:11-cv-2741-T-TGW, 2013 WL 544857, at *5 (M.D. Fla. Jan. 25, 2013) (plaintiff's IQ scores, obtained when he was eight years old, were not valid with respect to child's benefits and thus not valid for a claim of adult benefits). Thus, the Court finds that the ALJ properly found Plaintiff did not have a valid verbal, performance, or full scale IQ score of 60 through 70. (Tr. 25).

Plaintiff contends that his childhood IQ score suggests a need for retesting to determine whether his impairments meet or equal Listing 12.05C. (Doc. 20, pp. 6-7). However, the substantial evidence showing Plaintiff did not have deficits in adaptive functioning is sufficient to conclude his impairments did not meet or equal Listing 12.05C.[4] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05. As the ALJ noted, Plaintiff's work history, education, and activities provide substantial evidence that he did not have deficits in adaptive functioning.[5]

---

[4] An ALJ is not required to order a consultative examination if the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support an ALJ's findings. *See Holladay v. Bowen,* 848 F.2d 1206, 1210 (11th Cir. 1988).

[5] *See, e.g., Hickel v. Comm'r of Soc. Sec.,* 539 F. App'x 980, 984 (11th Cir. 2013) (noting evidence that claimant graduated from high school, although in special education, supported finding that claimant's impairments did not meet Listing 12.05); *Harris v. Comm'r of Soc. Sec.,* 505 F. App'x 874, 876 (11th Cir. 2013) (claimant's work history as a prep cook, dishwasher, food server, furniture delivery person, and truck driver supported the ALJ's finding that claimant did not have adaptive deficits); *Harris v. Comm'r of Soc. Sec.,* 330 F. App'x 813, 815 (11th Cir. 2009) (noting claimant's ability to hold several jobs, dress and bathe himself, take care of his personal needs, manage money, read, communicate

Plaintiff was able to complete a detailed questionnaire regarding his activities of daily living which indicated he was able to care for his personal needs, including toileting, eating, dressing, hygiene, and grooming (Tr. 25, 210). In addition, Plaintiff reported he was able to shop in stores for his personal items, do light cooking, and perform household chores (Tr. 25, 211-12, 375). Further, Plaintiff obtained a high school diploma, albeit in special education classes, he previously worked as a dishwasher and laborer, and he obtained a driver's license, although it was suspended reportedly due to unpaid tickets (Tr. 25, 40, 204, 374).

Plaintiff asserts that the report of Susana Lozada-Murray, Psy.D., who performed a consultative psychological examination on July 20, 2011, indicates his impairments met or equaled Listing 12.05 because she estimated his intellectual abilities fell in the borderline range (Tr. 375). (Doc. 20, pp. 7-8). However, Dr. Lozada-Murray did not diagnose Plaintiff with borderline intellectual functioning, or any other intellectual impairment (Tr. 376). Rather, Dr. Lozada-Murray diagnosed Plaintiff with polysubstance dependence, substance-induced psychotic disorder versus psychotic disorder not otherwise specified, and personality disorder not otherwise specified (Tr. 375-76). Moreover, the other doctors who treated and examined Plaintiff, including mental health professionals, did not diagnose him with borderline intellectual functioning or any other intellectual impairment, and they did not indicate he exhibited signs of intellectual deficits (Tr. 319-31, 334-37, 342-52, 357-64, 369-70, 378-79, 383-93, 395-96). Thus, Dr. Lozada-Murray's report and the other medical records do not indicate Plaintiff's impairments satisfied the diagnostic description in the introductory paragraph of Listing 12.05C or provide a basis for requiring the ALJ to obtain another consultative examination.

---

effectively, and do simple math provided substantial evidence that claimant did not have the necessary deficits in adaptive functioning).

In light of the foregoing, the Court finds the record provides substantial evidence to support the ALJ's findings, including his finding that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 22-28). In addition, the record contained sufficient evidence for the ALJ to make an informed decision, and Plaintiff failed to show that the ALJ needed to do more to develop the record. *See Graham,* 129 F.3d at 1423; *see also Sarria v. Comm'r of Soc. Sec.,* 579 F. App'x 722, 724 (11th Cir. 2014) (holding ALJ was not required to order additional medical examination to develop full and fair record where claimant did not produce evidence to support her alleged disability and existing evidence supported ALJ's findings).

IV.   **CONCLUSION**

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Tampa, Florida, on this 15th day of July, 2016.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

cc:  Counsel of Record